IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD WOOLF,

Plaintiff,

v. Case No. 26-2239-JWB

AMAZON.COM SERVICES LLC,
et al.,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion for a temporary restraining order ("TRO"). (Doc. 38.)[1] The motion is fully briefed and ripe for decision. (Docs. 38, 44, 53.) The motion is DENIED for the reasons stated herein.

## I. Facts

Plaintiff initiated this lawsuit on April 27, 2026. (Doc. 1.) The following facts are taken from Plaintiff's complaint. "Plaintiff was an employee of Amazon Fulfillment Center MKC-6." (*Id.* at 3.) Plaintiff worked in the "Ship in Own Container" ("SIOC") division which "is a vetted safe-work environment for accommodated employees that should never close when providing accommodations for employees." (*Id.*) The division is "physically separated from the main warehouse floor." (*Id.*) Defendant Amazon was apparently aware that the SIOC division was "the only approved environment for Plaintiff's disability." (*Id.*)

Defendant John Doe 3 allegedly shut down the SIOC division in August 2023 for 30 to 45 minutes. (*Id.*) During this time Plaintiff "was reassigned to a Hazardous Materials (HazMat)

[1] Plaintiff's related requests for a protective order and cease and desist order were previously denied by Magistrate Judge Wieland. (Doc. 54.)

environment on the main floor." (*Id.*) Plaintiff alleges he was not properly trained or given the necessary protective equipment to serve in this role. (*Id.* at 4.) The reassignment allegedly violated Plaintiff's medical accommodation. (*Id.*) At Plaintiff's assigned station he was required to utilize a "3M Company (3M) Citrus Based Adhesive Remover." (*Id.*) There was no safety data sheet or personal protective equipment present at this station. (*Id.*) This "resulted in Plaintiff's unprotected ingestion, inhalation, and dermal absorption of toxic vapors." (*Id.*) Plaintiff claims that this violated OSHA regulations. (*Id.*) The chemical is apparently considered a "Category 1B Carcinogen." (*Id.*) On August 11, 2023, Plaintiff suffered exposure to "beta-myrcene" along with a colleague. (*Id.*)

Plaintiff and this colleague went together to the "AMcare medical office." (*Id.* at 5.) According to Plaintiff, this colleague (who was a younger woman) received medical evaluation and aid that Plaintiff was denied. (*Id.*) Plaintiff believes this differential treatment was on account of his age and sex. (*Id.*) Plaintiff alleges further that following this denial of aid, Plaintiff "manifested acute distress in the liver, thyroid, and pancreas." (*Id.*) He claims this exposure caused "distress" to his skin, heart, stomach, lungs, small intestines, and gallbladder. (*Id.*) Defendant Amazon allegedly did not "formally acknowledge" the August 11 chemical accident until 64 days later. (*Id.*)

On October 17, 2023, Amy Steinhour at Conservative Care evaluated Plaintiff. (*Id.*) Plaintiff "attempted to provide 20 pages of emergency room records to Steinhour." (*Id.*) She refused to accept or review them. (*Id.* at 6.) Steinhour also failed to record Plaintiff's active antibiotic treatment for pneumonia and failed to document Plaintiff's prior illnesses. (*Id.*)

Back on August 24, 2023, Plaintiff had a "secondary reaction" to the chemical exposure that he says "manifested as acute cardiac distress and numbing hands." (*Id.*) Because Defendant

John Doe 1 "failed to properly operate the blood pressure monitoring equipment . . . Plaintiff was forced to self-administer his own vitals" which led to a blood pressure reading of 156/100. (*Id.*) Plaintiff personally called 911 after "Defendant John Doe 1 abandoned the Plaintiff in the medical office." (*Id.*) Plaintiff was then transported to the University of Kansas hospital where tests revealed that he had elevated heart enzymes which, according to Plaintiff, indicated "acute myocardial injury." (*Id.*)

Plaintiff further alleges that "Defendants falsified Plaintiff's electronic time records for August 24, 2023." (*Id.* at 7.) Plaintiff claims that his time records show a "punch out" time when he was in the hospital. (*Id.*) Plaintiff claims Defendants engaged in this action to "hide the emergency from Sedgwick Claims Management and the link to the original injury date of August 11, 2023." (*Id.*)

"Between October and November 2023, Plaintiff made three formal accommodation requests and discussed with the PXT desk accommodation needs for his ongoing pain and distress." (*Id.*) Plaintiff wanted to be restored to the SIOC division. (*Id.*) Defendant Amazon apparently did not respond to these requests. (*Id.*) As a result, Plaintiff alleges in November 2023, he was constructively discharged. (*Id.*)

Since his discharge, Plaintiff has "receive[d] daily automated shift invites from Amazon." (*Id.*) Still, despite the "functional capacity to communicate with the Plaintiff" the "Amazon Disability & Leave Services Team and Accommodations Team remain silent regarding Plaintiff's medical status." (*Id.* at 7–8.) Plaintiff has also "manifested a 6-8mm chest mass discovered during recent CT scans[]" and "will soon enter NYU Langone Health for an oncological work-up." (*Id.* at 8.)

For this conduct, Plaintiff advances seven claims: (1) disability discrimination and failure to accommodate, (2) retaliation, (3) disparate treatment, (4) gross negligence and wanton conduct, (5) fraudulent misrepresentation and concealment, (6) tort of outrage and intentional infliction of emotional distress, and (7) negligent training and supervision.

Plaintiff's motion for a TRO is premised on the following additional facts. Plaintiff currently lives in Jersey City, New Jersey, where he receives "specialized care from advanced and premier medical institutions." (Doc. 38-1 at 1.) On June 17, 2026, Plaintiff claims Thian Piang of Amazon's human resources department called Plaintiff, and "incessantly pressured Plaintiff to sign a voluntary [l]eave of [a]bsence." (*Id.* at 2.) Five minutes after this call, Plaintiff asserts, defense counsel called Plaintiff "to request a pre-service extension of time to answer." (*Id.*) A week later, another attorney called Plaintiff for the same reason. (*Id.*) Then, on June 19, 2026, Amazon "issued a sudden administrative directive ordering Plaintiff to physically report to a workplace facility (MKC-6) in Kansas for full, unaccommodated duty on less than 48 hours[] notice." (*Id.* at 2–3.) Plaintiff claims that Defendant "executed this directive fully aware that Plaintiff resides in New Jersey where he is currently seeking specialized medical care, creating a pretextual trap to manufacture an artificial 'job abandonment' defense." (*Id.* at 3.) Plaintiff asserts that this caused him severe stress and he suffered a stroke as a result. (*Id.*)

Soon after, Defendant "denied Plaintiff's formal request for a 15-workday leave of absence" and another subsequent request. (*Id.*) Plaintiff was unable to contact his manager during this time. (*Id.* at 3–4.) Plaintiff was also locked out of company electronic platforms. (*Id.* at 4.) Plaintiff then sent an email to Defendant attempting to use "accrued leave" to satisfy his time off requests. (*Id.* at 4–5.) Based upon these facts, Plaintiff requests a TRO "freezing [his] employment

status as ‘Active’ and enjoining Defendant from executing a manufactured or automated termination[.]” (Doc. 38 at 4.)

## II. Standard

When addressing a motion for both a TRO and a preliminary injunction, the court applies the same preliminary injunction standard. Four factors must be satisfied by the movant to obtain injunctive relief: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant’s threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest. *First Baptist Church v. Kelly*, 455 F. Supp. 3d 1078, 1084 (D. Kan. 2020). Because a preliminary injunction is an extraordinary remedy, the movant’s right to relief must be clear and unequivocal. *Id*., *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). “In seeking such an injunction, the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.” *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016) (citation and internal quotation marks omitted). However, where a movant fails to establish a likelihood of success on the merits, it is unnecessary to address the remaining requirements for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015).

## III. Analysis

For the reasons explained below, the court declines to enter a TRO. As Defendant Amazon argues, Plaintiff has not shown that he is likely to suffer irreparable harm. (Doc. 44 at 5.) “Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.” *Dominion*

*Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (cleaned up). "Demonstrating irreparable harm is 'not an easy burden to fulfill.'" *First W. Cap. Mgmt. Co. v. Malamed*, 874. F.3d 1136, 1141 (10th Cir. 2017) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). "[T]he movant 'must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *Id.* (quoting *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016)). The injury "must be certain, great, actual and not theoretical" and must be "of such imminence that there is clear and present need for equitable relief to prevent irreparable harm." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (internal citation and quotation marks omitted). "'Merely serious or substantial' or substantial harm is not irreparable harm." *Id.* (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). As is somewhat intuitive from these guiding standards, "simple economic loss usually does not, in and of itself, constitute irreparable harm[.]" *Id.* (quoting *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)).

As many other courts have concluded, the mere prospect that Plaintiff may lose his job is simply not an irreparable harm; it is one of the quintessential injuries that can be remedied with money damages. *Schrier*, 427 F.3d at 1267 ("Dr. Schrier has presented no evidence that his removal as Chair during the time it will take to litigate this case will have an irreparable effect in the sense of making it difficult or impossible for him to resume his chairmanship or restore the status quo ante in the event he prevails. . . . Moreover, Dr. Schrier made no attempt to apprise this court of any evidence in the record showing actual or significant risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages."); *Calderon v. City and Cnty. of Denver*, No. 24-CV-2406-NYW-TPO, 2025 WL 2676046, at *4 (D. Colo. Sep. 17, 2025), *vacated on other grounds by* 2026 WL 2185110 (D. Colo. Jul. 29, 2026) ("*Sampson*

explains that irreparable harm based on a termination of employment will only be found in the genuinely extraordinary situation in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Although the Tenth Circuit has never applied this portion of *Sampson*, the weight of out-of-circuit authority holds that legal remedies—including backpay and reinstatement—are generally an adequate remedy for the termination of employment and associated benefits.") (internal quotation marks and citations omitted); *Prkic v. Sezzle, Inc.*, No. 24-CV-2624-PAB, 2025 WL 35589, at *3 (D. Colo. Jan. 6, 2025) ("Since *Sampson*, courts have held that, in lawsuits alleging wrongful termination or adverse employment action, the plaintiff is ordinarily not irreparably harmed.") (cleaned up, citation omitted); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1182 (D.N.M. 2021) ("Similarly, a permanent loss of employment, standing alone, does not equate to irreparable harm.") (cleaned up, citation omitted); *Brass v. Biden*, No. 21-CV-2778-CMA-MEH, 2021 WL 6498143, at *2 (D. Colo. Dec. 23, 2021), *report and recommendation adopted*, 2022 WL 136903 (D. Colo. Jan. 14, 2022) ("The loss of employment income or other benefits can be remedied monetarily."); *Nagim v. Walker*, No. 10-CV-2973-WYD-KLM, 2011 WL 1542460, at *2 (D. Colo. Mar. 8, 2011), *report and recommendation adopted*, 2011 WL 1542157 (D. Colo. Apr. 25, 2011) ("To the extent that his alleged injury stems from termination of his employment, Plaintiff has an adequate remedy at law, namely compensation for lost wages and/or other economic relief."); *Price v. Mill-Tel, Inc.*, No. 09-CV-25130-JWL, 2010 WL 11628030, at *3 (D. Kan. Apr. 27, 2010) (holding that a plaintiff had failed to show anything other than harm beyond financial loss as a result of the termination of employment, which could be remedied by money damages).

Plaintiff has made little effort to show the court that he will suffer irreparable harm. Plaintiff claims he is likely to face "an automated, non-discretionary termination for cause" as a consequence of Defendant Amazon's actions. (Doc. 38-1 at 6–7.) But as explained above, this alone is insufficient to show irreparable harm, regardless of Plaintiff's recitation of the legal standard as part of his arguments. (*Id.*) The mere fact that a monetary award would be "delayed" until after the case is resolved is likewise insufficient to show irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 92, n.68 (1974) ("We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual.").[2] Accordingly, Plaintiff's request for a TRO and preliminary injunction is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for a temporary restraining order is DENIED. (Doc. 38.)

IT IS SO ORDERED. Dated this 17th day of August, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

[2] Plaintiff recently suffered a stroke and asserts that this medical event supports his assertion of irreparable harm. His suggestion that the medical consequences of his stroke supply the irreparable harm necessary for preliminary relief misunderstands the nature of the inquiry. (Doc. 53 at 2.) The proper scope of the court's search for irreparable harm is what harm will be caused *absent the entry of TRO or preliminary injunction*. *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm *in the absence* of preliminary relief . . . .") (emphasis added). It is speculation to say that Defendant Amazon caused Plaintiff's stroke and, in any event, the stroke is not relevant to the underlying claims in this lawsuit. Moreover, the injuries from the stroke have already occurred. For these reasons, while the court sympathizes with Plaintiff's medical situation, it does not supply the basis for a TRO.